# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| APTUSTECH LLC, | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:19-cv-133 |
| v. | § | Judge Mazzant |
| | § | |
| TRIMFOOT CO., LLC | § | |
| *Defendant*, | § | |
| | § | |

## <u>CLAIM CONSTRUCTION MEMORANDUM AND ORDER</u>

Before the Court are Plaintiff AptusTech LLC's ("Plaintiff" or "AptusTech") Claim Construction Opening Brief (Dkt. #39), Defendant Trimfoot Co., LLC's ("Defendant" or "Trimfoot") Responsive Claim Construction Brief (Dkt. #50), and Plaintiff's Claim Construction Reply Brief (Dkt. #52).  Also before the Court are the parties' November 20, 2019 Joint Claim Construction and Prehearing Statement (Dkt. #38) and the parties' February 6, 2020 Amended Joint Claim Construction Chart (Dkt. #55).  The Court held a claim construction hearing on February 7, 2020, to determine the proper construction of the disputed claim terms in United States Patent No. 8,387,284 ("the '284 Patent").

The Court issues this Claim Construction Memorandum Opinion and Order and hereby incorporates-by-reference the claim construction hearing and transcript as well as the demonstrative slides presented by the parties during the hearing.  For the following reasons, the Court provides the constructions set forth below.

# TABLE OF CONTENTS

BACKGROUND .................................................................................................................. 3

LEGAL STANDARDS ...................................................................................................... 3

ANALYSIS .......................................................................................................................... 7

    I.    Agreed Claim Terms .................................................................................. 7

    II.    Disputed Claim Terms............................................................................... 7

        A.   "attachment element configured for cooperative releasable fixed fastening engagement," "releasably fixedly attaching," "attachment element configured for fixed removable fastening engagement," "configured to provide the fixed fastening engagement" .................................................................................... 7

        B.   "covering and integrating" and "configured for integration with and covering" .............................................................................................. 15

        C.   "lateral and vertical resistance"............................................................ 21

        D.   "distanced from peripheral ends" ......................................................... 26

        E.   "unintended removal" ........................................................................... 31

CONCLUSION.................................................................................................................. 33

## BACKGROUND

Plaintiff has brought suit alleging infringement of United States Patent No. 8,387,284.  The '284 Patent, titled "Footwear, Clothing and Other Apparel with Interchangeable Toe and Heel Members or Other Ornaments and Related Methods and Systems," was issued on March 5, 2013, and bears an earliest priority date of July 6, 2008.  Plaintiff submits that the '284 Patent "generally relates to systems and methods for interchangeable ornamentation of clothing" (Dkt. #39 at p. 10). The Abstract of the '284 Patent states:

> A method for providing changeable designs on clothing such as shoes by integrating a portion of the outer surface of an existing article of the shoe with a base anchor, and a system therefor. A selected ornamentation is placed on the shoe at the site of the base anchor. The ornamentation is integrated with an attachment for cooperative releasable fastening engagement with the anchor. The ornamentation is releasably fastened to the outer surface of the shoe by engaging the base anchor with the attachment of the ornamentation. The attachment and the base anchor provide the fastening of the ornamentation to the outer surface of the shoe substantially without intervening fastening elements, between the ends of the ornamentation and the outer surface of the shoe, which space the peripheral ends from the shoe. The engaging between the base anchor with the ornamentation is positioned as not being externally visible.

## LEGAL STANDARDS

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).   The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the

patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elan Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g*, 334 F.3d at 1324. However, the prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance.

*Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). Statements will constitute disclaimer of scope only if they are "clear and unmistakable statements of disavowal." *See Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1358 (Fed. Cir. 2003). An "ambiguous disavowal" will not suffice. *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) (citation omitted).

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus*, 134 S. Ct. 2120. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co.*

*v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## ANALYSIS

### I.    *Agreed Claim Terms*

The parties agreed to the constructions of the following terms/phrases in their February 6,

2020 Amended Joint Claim Construction Chart Pursuant to P.R. 4-5(d):

| Claim Term/Phrase | Agreed Construction |
|---|---|
| Base anchoring element (Claims 1, 13) | No construction necessary. |
| Fastening element/thereon (Claim 1) | No construction necessary. |
| Outer surface (Claims 1, 13) | No construction necessary. |

(Dkt. #55 at pp. 4-5).  In view of the parties' agreement on the proper construction of the identified

terms, the Court hereby **ADOPTS** the parties' agreed constructions.

### II.    *Disputed Claim Terms*

**A.  "attachment element configured for cooperative releasable fixed fastening engagement," "releasably fixedly attaching," "attachment element configured for fixed removable fastening engagement," "configured to provide the fixed fastening engagement"**

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "releasable fixed fastening engagement" | "something capable of being selectively freed from a connected or firm position" | As of July 6, 2008, these disputed terms mean "adapted to be engage or disengage by interlocking channels and posts and a positive snap-on placement." |
| "attachment element configured for cooperative releasable fixed" | "something that is designed or adapted to work together to be selectively freed from an attached position" | |
| "releasably fixed attached" | "selectively freed from a connected or firm position" | If the Court finds that an alternative construction is appropriate, the Court should find AptusTech's priority date is the filing date of the disclosure on which such alternative |
| "attachment element configured for fixed removable fastening element" | "something that is designed to work together to be selectively freed from an attached position" | |

| "configured to provide the fixed fastening engagement" | "designed as adapted to secure firmly" | construction finds support. |
|---|---|---|

(Dkt. #39 at p. 15; Dkt. #50 at pp. 30-31; Dkt. #55 at pp. 1-2).  The parties submit that these phrases appear in Claims 1 and 13. (Dkt. #55 at pp. 1-2).[1]

### 1.  The Parties' Positions

The parties dispute whether the "attachment" terms/phrases should be limited to a tongue-and-groove embodiment, as Defendant proposes.  Plaintiff argues that the claims and the specification are replete with examples of the attachment terms being used according to its proposed constructions. (Dkt. #39 at p. 16) (citing '284 Patent at 3:22–25, 9:9–11, 4:5–9).  Plaintiff contends that there is no dispute that the "attachment terms" as used throughout the claims and specification discloses a selectively removing or freeing an ornament from an attached or fixed position. (Dkt. #39 at p. 16).

Plaintiff further contends that Defendant submits that the "attachment" phrase should be limited to engagement and disengagement by interlocking channels and posts, and a positive snap-on placement. (Dkt. #39 at p. 16).  Plaintiff argues that Defendant relies on a single specific embodiment while ignoring other examples and embodiments described in the specification. (Dkt. #39 at p. 18).  Plaintiff also argues that the specifications teaches that a variety of devices may be used for attaching ornaments to the shoe or other article of clothing. (Dkt. #39 at p. 18) (citing '284 Patent at 7:4–8, 6:43–47, 8:57–64).

---

[1] The proposed phrase "releasably fixed attached" does not appear in claim 1.  Instead, the phrase "releasably fixedly attaching" is recited in claim 1.  Similarly, the proposed phrase "fixed removable fastening element" does not appear in claim 13.  Instead, the phrase "fixed removable fastening engagement" is recited in claim 13.  During the Claim Construction Hearing, Plaintiff indicated that this difference would not impact the parties' arguments.  The Court understands this to mean that the parties are asking the Court to construe the phrases that actually appear in the claims, and not the language presented by the parties.

Defendant responds that the proper claim construction for the attachment terms must be limited to the contents of the provisional application. (Dkt. #50 at p. 31). According to Defendant, the provisional patent application consistently refers to a single embodiment as "the present invention," and does not discuss alternatives to a tongue-and-groove mechanism. (Dkt. #50 at p. 32) (citing Dkt. #50-6 at pp. 18, 20, 24). Defendant argues that the scope of any claim which relies on the provisional application for priority must be similarly limited in scope. (Dkt. #50 at p. 33).

Plaintiff replies that Defendant derived its proposed construction from the single "tongue-and-groove" example in the specification. (Dkt. #52 at pp. 8-9). Plaintiff contends that the specification does not state or suggest that this limitation is required. (Dkt. #52 at p. 9). Plaintiff further argues that this proposed limitation is found in the dependent claims of the '284 Patent. (Dkt. #52 at p. 9). Plaintiff also contends that its construction finds broad support in the claims and the specification. (Dkt. #52 at p. 10).

### 2. Analysis

As an initial matter, the phrases "attachment element configured for cooperative releasable fixed" and "releasable fixed fastening engagement" overlap in claim 1. To avoid confusion, the Court will construe the single phrase "attachment element configured for cooperative releasable fixed fastening engagement," which is a combination of these two phrases. Turning to the proper construction for this phrase, the Court finds that the specification states that the "invention relates to accessories or clothing, such as footwear, in particular to sneakers with, for example, interchangeable toe and heel design members. The interchangeable design members may, for example, display a logo or character, a particular color palette or be custom designed by or for a particular consumer or user." '284 Patent at 1:16–21. The specification further states that "[i]t is

further an object of the present invention to provide heel or toe members which are firmly affixed to the footwear using a fastening element, *such as, for example*, a tongue-and-groove slide mechanism." '284 Patent at 2:8–12 (emphasis added).  An example of this is illustrated in Figures 3a-3d.



Figures 3a and 3b illustrate the wing heel design member 315 being inserted into the tongue-and-groove mechanism 320. *Id.* at 7:31–32.  The specification states that the "corresponding, interlocking mechanism 325 is visible on the wing heel design member 315." *Id.* at 7:32–34.  The specification further states that "FIGS. 3c and 3d show the tongue-and-groove mechanism 320 and corresponding, interlocking mechanism 325, which fit together to secure the toe and/or heel design

member to the sneaker." *Id.* at 7:34–37.

Turning to the claim language, claim 1 recites "an existing article of clothing" (*e.g.*, a sneaker) that includes "at least one base anchoring element" and "at least one fastening element" (*e.g.*, collectively item 320 in Figure 3a).  Claim 1 also recites "at least one ornamentation element" (*e.g.*, wing heel 315).  The disputed phrase further provides that the at least one ornamentation element includes an "attachment element configured for cooperative releasable fixed fastening engagement" with the at least one fastening element of the article of clothing.

Given this context, a person of ordinary skill in the art would understand that the recited "attachment element" is the element configured to attach/detach the at least one changeable ornamentation element.  Moreover, the "cooperative releasable fixed fastening engagement" is "engaging/disengaging the at least one fastening element."  Accordingly, the phrase "attachment element configured for cooperative releasable fixed fastening engagement" is construed to mean "element configured to attach/detach the at least one changeable ornamentation element by engaging/disengaging at least one fastening element."

Because claim 13 recites similar elements to claim 1, the Court's construction for the disputed terms in claim 13 is similar to claim 1.  Like claim 1, claim 13 recites "an article of clothing" (*e.g.*, a sneaker) that has "at least one base anchoring element" and "at least one fastening element" (*e.g.*, collectively item 320 in Figure 3a).  Claim 13 also recites "at least one ornamentation element" (*e.g.*, wing heel 315).  The disputed phrase further provides that the at least one ornamentation element includes an "attachment element configured for fixed removable fastening engagement" with the at least one fastening element of the article of clothing.  Accordingly, the phrase "attachment element configured for fixed removable fastening engagement" is construed to mean "element configured to attach/detach the at least one

ornamentation element by engaging/disengaging the at least one fastening element"

Defendant argues that the patentee limited the "attachment" terms to the tongue-and-groove mechanism in the provisional application. (Dkt. # 50 at p. 32). According to Defendant, the provisional application does not "discuss or even hint at alternatives to a tongue and groove mechanism." (Dkt. # 50 at p. 32). Defendant further argues that "the provisional consistently refers to a single embodiment as 'the present invention,' which '[a]s shown in the drawings, [is for] ornamental placement on a shoe or sneakers [that] require a two step process (slide and snap).'" (Dkt. # 50 at p. 32). The Court disagrees that the "attachment" terms should be limited to the preferred embodiment disclosed in the provisional application.

A provisional application can contribute to understanding the claims. *See Trs. of Columbia Univ. in N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1365 (Fed. Cir. 2016) (looking to the provisional application for guidance as to claim construction); *Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1383 (Fed. Cir. 2014) (same). However, it is well established that it is impermissible to import limitations into claims from examples in the specification, unless the specification and/or prosecution history makes it very clear that the patent intended such limitation. *See, e.g., JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) ("We do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment . . ."); *Alloc, Inc. v. Int'l Trade Comm'n,* 342 F.3d 1361, 1370 (Fed. Cir. 2003) ("[I]t is impermissible to read the one and only disclosed embodiment into a claim without other indicia that the patentee so intended to limit the invention."). There is no indication that the patentee intended to limit the claims to the tongue-and-groove mechanism. *See, e.g.*, *MPHJ Tech. Invs., LLC v. Ricoh Ams. Corp.*, 847 F.3d 1363, 1369 (Fed. Cir. 2017) ("The

'173 Patent in its final form contains no statement or suggestion of an intent to limit the claims to the [embodiment disclosed in the provisional application].")

Instead, the specification indicates that the tongue-and-groove mechanism is only one embodiment.  Indeed, the specification states that "FIGS. 3a-3b depict *an embodiment of the invention* with a heel member in the shape of a wing." '284 Patent at 5:4–5 (emphasis added).  Moreover, the specification provides a number of alternative embodiments to the tongue-and-groove mechanism. *Id.* at 7:4–7 ("*Other alternatives to the tongue-and-groove clip*, or in addition to it, include binder clips, spring clips, screws, pins, Velcro, adhesive, epoxy, zippers, removable clasps or added fabric flaps with one or more of these or other fasteners attached thereon or thereto.") (emphasis added).  Likewise, the specification states that "[t]he embodiments described above are exemplary only," and that "[o]ne skilled in the art may recognize variations from the embodiments specifically described here, which are intended to be within the scope of this disclosure." *Id.* at 8:57–60.

Additionally, Defendant's proposed limitation is found in the dependent claims of the '284 Patent, which necessarily suggests that independent claims are broader than the limitation proposed by Defendant. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 911 (Fed. Cir. 1988) ("It is improper to read the limitations of one claim into another.").  For example, claim 5 recites "wherein the at least one fastening element of the base anchor element and attachment element *comprise a tongue in groove attachment* configuration." '284 Patent at Claim 5 (emphasis added).  Accordingly, the Court rejects Defendant's construction.

Defendant further argues that the priority date is no later than the filing date of the provisional's filing on July 6, 2008. (Dkt. #50 at p. 33).  Defendant contends that the invention was limited to structures capable only of "engagement and disengagement by interlocking

channels and posts and a positive snap-on placement." (Dkt. #50 at p. 33).  If the Court does not adopt Defendant's construction, Defendant requests that the Court identify the date of the disclosure papers on which it relies as the priority date for the asserted claims. (Dkt. #50 at p. 34). Based on the evidence before the Court, the priority date for the asserted claims is July 6, 2008, which is the date the provisional application was filed.

Turning to Plaintiff's construction, Plaintiff proposes five similar, but slightly different constructions for the "attachment" terms/phrases.  As indicated above, the phrases "attachment element configured for cooperative releasable fixed" and "releasable fixed fastening engagement" overlap in claim 1.  Plaintiff proposes a "selectively freed" requirement for both of these phrases. The Court rejects Plaintiff's constructions because the claim language is from the perspective of "engagement," not disengagement.   Plaintiff has not provided a persuasive reason to redraft "engagement" as "selectively freed."

Plaintiff also proposes construing the phrase "releasably fixed attached."  As indicated above, this phrase does not appear in claim 1.  Instead, the phrase "releasably fixedly attaching" is recited in claim 1.  Given that the Court has construed the phrase "attachment element configured for cooperative releasable fixed fastening engagement," the Court finds that the phrase "releasably fixed attached" does not require construction.  Moreover, Plaintiff's construction is rejected because it includes the "selectively freed" language, and the actual claim language is "attaching," not "freeing."

Like the previous term, the phrase "fixed removable fastening element" does not appear in claim 13.  Instead, the phrase "fixed removable fastening engagement" is recited in claim 13. Claim 13 is similar to claim 1.  Thus, the Court rejects Plaintiff's construction for the proposed "attachment element configured for fixed removable fastening element" for the same reason.  The

Court further finds that the phrase "configured to provide the fixed fastening engagement" does not require construction. This phrase refers to the "fixed fastening engagement" construed by the Court in the phrase "attachment element configured for fixed removable fastening engagement."

The Court therefore hereby construes these disputed phrases as set forth in the following chart:

| Term | Construction |
|---|---|
| **"attachment element configured for cooperative releasable fixed fastening engagement"** | **"element configured to attach/detach the at least one changeable ornamentation element by engaging/disengaging the at least one fastening element"** |
| **"releasably fixedly attaching"** | **Plain meaning.** |
| **"attachment element configured for fixed removable fastening engagement"** | **"element configured to attach/detach the at least one ornamentation element by engaging/disengaging the at least one fastening element"** |
| **"configured to provide the fixed fastening engagement"** | **Plain meaning.** |

### B. "covering and integrating" and "configured for integration with and covering"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "covering and integrating"

"configured for integration with and covering" | These phrases do not require construction. In the alternative only, "spreading or extending over and combining." | "attaching to the exterior surface of the article without perforation of the outer surface of the article" |

(Dkt. #39 at p. 31; Dkt. #50 at pp. 15; Dkt. #55 at pp. 2-3). The parties submit that these phrases appear in Claims 1 and 13. (Dkt. #55 at pp. 2-3).

### 1. The Parties' Positions

The parties dispute whether the patentee disclaimed embodiments with perforations in the outer surface of the article of clothing. Plaintiff argues that the covering and integrating terms

deal with the location of the base anchoring element relative to the outer surface of the garment. (Dkt. #39 at p. 33). Plaintiff contends that Defendant's construction would limit the attaching of the base anchoring element to the outer surface of an article of clothing by means that do not penetrate to an interior surface of the garment. (Dkt. #39 at p. 33). Plaintiff argues that this is contradicted by the specification. (Dkt. #39 at p. 33) (citing '284 Patent at 3:58–59). According to Plaintiff, there is no restriction in the claims or specification that the methods of securing the base anchoring element may not penetrate an interior layer. (Dkt. #39 at pp. 33–34) (citing '284 Patent at 7:8–12).

Defendant responds that Plaintiff disclaimed all perforation-style fastening structures from its claim scope during prosecution. (Dkt. #50 at pp. 15-16) (citing Dkt. #50-2 at pp. 25-26). According to Defendant, Plaintiff expressly stated that "integration with an outer surface does not include perforation," and further clarified its intent that such meaning be read into each asserted claim in order to avoid the Huffman and Crocs Jibbitz prior art reference. (Dkt. #50 at p. 16). Defendant contends that Plaintiff clearly and unequivocally represented its claims excluded structures that perforate the outer surface of an article. (Dkt. #50 at p. 17).

Plaintiff replies that Defendant's constructions are overly restrictive and seek to import limitations not found within the specification or the claims. (Dkt. #52 at p. 2). Plaintiff argues that Defendant mischaracterizes the arguments made during the prosecution of the '284 Patent to support its improper construction. (Dkt. #52 at p. 3). According to Plaintiff, perforation or groove structures that are in and cover any of the outer surface were not excluded. (Dkt. #52 at p. 3). Plaintiff contends that it was distinguishing its invention from the "existing hole in the shoe" configuration taught by the Jibbitz/Crocs footwear. (Dkt. #52 at p. 3). Plaintiff further argues that it specifically disclosed that covering and integrating includes perforation or groove structures that

are in and cover an outer surface. (Dkt. #52 at p. 3).

### 2. Analysis

"The prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).  For prosecution disclaimer to arise, "the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003).  For the following reasons, the Court finds that the patentee clearly and unmistakably disclaimed embodiments with perforations in the outer surface of the article.

In November of 2012, claims 22 and 31 (respectively claims 1 and 13 in the '284 Patent), were rejected in view of U.S. Patent No. 2,076,514 ("Huffman"). (Dkt. #50-2 at pp. 5-7).  In responding to the rejection, the patentee clearly and unmistakably argued what it meant by the term "integration with an outer surface." Specifically, the patentee argued the following:

> The Examiner cited the Huffman reference, with grooves 4 (described by Huffman as being deeply formed in the heel 2, page 1, col. 2, lines 35-47) into which ribs 18 and 20 are inserted, as being equivalent to the base anchoring element in independent claims 22 and 31. The undersigned during said interview questioned this characterization by noting that the base anchoring element in claims 22 and 31 is integrated with the outer surface of the article of clothing (e.g., sneaker or shoe) whereas the grooves 4 of Huffman are not integrated **with the outer surface**, as required by the claims. The Examiner noted, in reply, that grooves (as in Huffman) are in fact literally formed and integrated with "the outer surface" of heel 2. It is however submitted that, at paragraph [006] of the present specification, In response to this literal reading it is submitted that, Applicant, in discussing and excluding the Crocs® Jibbitz® charms ornamentation as prior art, from the structure of the present application, as claimed, has specifically noted that since the Jibbitz charms "... require perforation in the shoe for attachment, they cannot be directly applied to the shoes ...". *Applicant has thus defined in the specification that "integration with an outer surface" does not include perforation of the shoe*, as with the Jibbitz charms and as shown by Huffman. *Such restrictive and excluding definition must be read into the claims and the claims cannot accordingly be broadly interpreted*

*as the Examiner has done.* Nevertheless, independent claims 22 and 31 have been amended to specifically claim that the base anchoring element "covers" a portion of the outer surface of article of clothing *to clearly exclude any perforation or groove structure which is in but does not cover an outer surface.* Huffman thus neither discloses nor teaches or even suggests the base anchoring element with the parameters as set forth in the present claims. The Examiner is accordingly respectfully requested to review and withdraw the rejections of the claims based on the Huffman reference.

(Dkt. #50-2 at pp. 25-26) (bold emphasis in original, italic emphasis added).  As shown below, Huffman's ornamentation element has an "attachment element (ribs 20)" that integrate with "base anchoring element (groove 4)" thereby perforating and going into the "outer surface of an article of clothing (footwear)."



Huffman at Figure 1 and 2 (highlighting added).  By making this argument, the patentee clearly and unmistakably excluded perforation that go into an outer surface of an article, as well as perforation structures that go through the outer surface an article. *Springs Window Fashions LP v.*

*Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent."). Thus, the examiner's "literal reading" that the "that grooves (as in Huffman) are in fact literally formed and integrated with 'the outer surface' of heel 2" was excluded from the scope of the claims. (Dkt. #50-2 at p. 25).

Likewise, the specification disclaims perforation through the outer surface an article by its criticism of Croc's perforation style fastener. '284 Patent at 1:55–58 ("Since the Jibittz® charms require perforation in the shoes for attachment, they cannot be directly applied to the shoes at all and only as peripheral attachments, such as to shoelaces.). Accordingly, the Court construes the phrase "covering and integrating at least one portion of an outer surface of an existing article" and the phrase "integration with and covering a portion of an outer surface of an article" to mean "attaching to the outer surface of an article without perforation of the outer surface."

Plaintiff argues that "there is no restriction in the claims or specification" of securing the base element by penetrating an interior layer. (Dkt. #39 at p. 32). This argument, at a minimum, fails to consider the prosecution history. *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1357 (Fed. Cir. 2017) ("Prosecution disclaimer can arise from both claim amendments and arguments made to the PTO."). In its reply brief, Plaintiff contends that Defendant "mischaracterizes the arguments made during the prosecution of the '284 Patent." (Dkt. #52 at p. 3). According to Plaintiff, "perforation or groove structures that are in and cover any of the outer surface were not excluded by AptusTech." (Dkt. #52 at p. 3). The Court disagrees.

The perforation or grooves in Huffman were in the outer surface. Contrary to Plaintiff's suggestion, the amended claim language of "covering" did not broaden the claims to include a groove in the outer surface. Instead, the patentee clarified what it meant by "integration with an

outer surface" (*i.e.*, does not include perforation of the shoe), and added a further limitation that the "base anchor element" must also "cover" the outer surface. The Court's construction captures both of the limitations explicitly argued for by the patentee during the prosecution history. A base anchor element that is "attached" to the outer surface will "cover" the outer surface. And, as discussed above, this attachment or "integration" excludes "perforation of the outer surface of the article."

During the Claim Construction Hearing, Plaintiff argued that its prosecution history argument was that the claims require a base anchoring element, and that the prior art did not include a base anchoring element. The Court agrees that this was the initial argument made by Plaintiff. However, this argument was rejected by the examiner. *See* (Dkt #50-2 at p. 25) ("The Examiner noted, in reply, that grooves (as in Huffman) are in fact literally formed and integrated with 'the outer surface' of heel 2."). The patentee's response to this rejection was to explicitly state that it had "defined in the specification that 'integration with an outer surface' does not include perforation of the shoe, as with the Jibbitz charms and as shown by Huffman." (Dkt #50-2 at pp. 25-26). The patentee went on to further argue that "[s]uch restrictive and excluding definition must be read into the claims and the claims cannot accordingly be broadly interpreted as the Examiner has done." (Dkt #50-2 at p. 26). This is a clear and unmistakable disclaimer. Plaintiff cannot now recapture what the patentee disclaimed during prosecution in order to obtain the patent.

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| "covering and integrating at least one portion of an outer surface of an existing article" | "attaching to the outer surface of an article without perforation of the outer surface" |

| "integration with and covering a portion of an outer surface of an article" | "attaching to the outer surface of an article without perforation of the outer surface" |
|---|---|

### C.  "lateral and vertical resistance"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal[2] |
|---|---|---|
| "lateral and vertical resistance" | This phrase does not require construction.<br>In the alternative only, "horizontal and perpendicular opposing forces" | Indefinite.<br>Alternatively, to the extent the Court determines these terms are amenable to construction, Trimfoot asserts the terms mean: "resistance in two perpendicular axes along the plane parallel to the surface of the shoe" |

(Dkt. #39 at p. 24; Dkt. #50 at p. 18; Dkt. #55 at p. 3).  The parties submit that this phrase appears in Claims 1 and 13. (Dkt. #55 at p. 3).

### 1.    The Parties' Positions

The parties dispute whether the term "lateral and vertical resistance" is indefinite under 35 U.S.C. § 112.  In the alternative, the parties dispute the proper construction for the term "lateral and vertical resistance."  Plaintiff argues that "lateral," "vertical," and "resistance" are all terms that are readily understood by one of ordinary skill in the art. (Dkt. #39 at p. 26).  Plaintiff contends that combining these terms makes them no less difficult to comprehend or makes them indefinite. (Dkt. #39 at p. 26).  Plaintiff further argues that Defendant proposes a construction that would not be well understood by those of skill in the art, that is not supported by the teachings from the specification of the '284 Patent, and adds unnecessary layers of complexity. (Dkt. #39 at p. 26).  Plaintiff contends that the Court should either decline to construe these terms or should adopt its constructions. (Dkt. #39 at p. 27).

Defendant responds that the patent and file history define different frames of reference,

---

[2] During the Claim Construction Hearing, Defendant argued for the first time that it was withdrawing its alternative construction.

resulting in inconsistent meanings of the terms "lateral" and "vertical." (Dkt. #50 at p. 18). According to Defendant, no person of ordinary skill in the art can understand the meaning of the terms "lateral and vertical resistance" as employed by the '284 Patent without knowing the coordinate system in which the terms are used. (Dkt. #50 at p. 19). Defendant contends that no such coordinate system exists in the '284 Patent or its file history. (Dkt. #50 at p. 19).

Defendant further argues that Plaintiff's provisional and utility patent application support a meaning for "vertical resistance" where the vertical axis runs parallel with the length of the base anchor, and the "lateral resistance" is perpendicular with the base anchor. (Dkt. #50 at pp. 20-21). Defendant contends that Plaintiff's prosecution arguments and claim amendments indicated that "lateral" meant along the length of the base anchor structure, and "vertical" meant away from the base anchor structure. (Dkt. #50 at pp. 21-24). Defendant argues that one of ordinary skill in the art would not be able to reasonably determine the meaning for these terms, because of Plaintiff's use of inconsistent reference frames. (Dkt. #50 at p. 25). According to Defendant, the '284 Patent fails to "inform those skilled in the art about the scope of the invention with reasonable certainty" and should be declared invalid by the Court. (Dkt. #50 at p. 25) (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014)).

Plaintiff replies that Defendant's assertion of indefiniteness is contrary to the specification, the prosecution history, and patent case law. (Dkt. #52 at p. 4). Plaintiff argues that Defendant is attempting to limit its proposed construction to a tongue-and-groove structure. (Dkt. #52 at p. 5). Plaintiff further argues that Defendant's citations to the patent and file history do not aid the Court in construing the proposed claim terms. (Dkt. #52 at p. 5). According to Plaintiff, Defendant's construction is improperly limited to a specific embodiment. (Dkt. #52 at p. 5).

### 2. Analysis

The Court finds that the term "lateral and vertical resistance," when read in light of the

specification delineating the patent and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus*, 134 S. Ct. at 2124. Claims 1 and 13 recite that the "attachment element" of the at least one ornamentation element is "configured to provide both lateral and vertical resistance to prevent unintended removal of the ornamentation element." Defendant argues that the patent and file history define different frames of reference, which results in inconsistent meanings of the terms "lateral" and "vertical." (Dkt. #50 at p. 18). According to Defendant, the provisional and utility patent application support a meaning for "vertical resistance" where the vertical axis runs parallel with the length of the base anchor, and the "lateral resistance" is perpendicular with the base anchor. (Dkt. #50 at pp. 19-21). Defendant argues that the patentee argued the exact opposite in the prosecution history. (Dkt. #50 at pp. 21-25). Defendant provides the following figure to illustrate its argument.



(Dkt. #50 at p. 25). Plaintiff does not contend that Defendant's analysis of the intrinsic evidence is incorrect. Instead, Plaintiff argues that these "inconsistencies" do not aid the Court in construing the proposed claim terms, and that Defendant is attempting to limit the claims to only attachment elements with tongue-and-groove structures. (Dkt. #52 at p. 5).

The Court agrees that the patentee used the terms "vertical" and "lateral" interchangeably in the intrinsic evidence. For example, the specification states that "FIG. 1 is a side view of a

sneaker showing an embodiment of the invention having a vertically positioned fastening element for placement of a heel member thereon and a toe member in place." '284 Patent at 4:64–67.  In contrast to this statement, the patentee argued in its August 2, 2012 Office Action Response that "[t]he grooves in all of the James embodiments shown in Figures 3b to 5a are all open at both ends and such opening provide no lateral resistance to unintended removal (absent elements 18 and 30)." (Dkt. #50-3 at p. 18).  The patentee further argued that "without such 'adhesive' strips, James' structure, as shown and described in Figure 5b, neither provides nor suggests, vertical resistance to dislodgement and the cover pad would inevitably be dislodged and fall off during use in the absence of strips 30 and 18." (*Id.* at p. 19).  Figure 5b of United States Patent Publication 2005/0005478 ("James") is illustrated below:



Figure 5b

James at Figure 5b.  When the prosecution history is considered with the specification, it is clear that the patentee used the terms "lateral" and "vertical" interchangeably.  However, this does not necessarily mean that a person of ordinary skilled in the art would not be able to determine the scope of the invention with reasonable certainty.  Indeed, the intrinsic evidence indicates that the term "vertical" and "lateral" were used to distinguish different directions with respect to the outer surface of the shoe.  The parties agree that theses directions are perpendicular to one another. (Dkt.

#55 at p. 3).  As illustrated in the figure provided by Defendant, the intrinsic evidence confirms this relative aspect of the direction.



(Dkt. #50 at p. 25). Therefore, the essence of the parties' dispute is whether the directions must be "along the plane parallel to the surface of the shoe," as Defendant proposes.  The Court finds that one of the directions must be perpendicular to the outer surface.  This is exactly what the patentee argued was lacking in the prior art, because without this resistance the cover pad would "fall off during use in the absence of strips 30 and 18." (Dkt. #50-3 at p. 19).

That said, the specification does not limit the directions to "along the plane parallel to the surface of the shoe."  Instead, the intrinsic evidence indicates that as long as one direction is perpendicular to the outer surface to resist the ornamentation from falling off and prevent unintended removal, the other direction may be in any orientation.  For example, the specification states that "[t]he grooves in the clip may also be oriented vertically or horizontally or at any diagonal." '284 Patent at 7:19–21.  Accordingly, the Court rejects this aspect of Defendant's construction.

The Court therefore hereby construes **"lateral and vertical resistance"** to mean **"resistance in a first direction and a second direction, wherein the first direction is perpendicular to the second direction, and one direction is perpendicular to the outer**

surface."

### D.  "distanced from peripheral ends"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "distanced from peripheral ends" | No construction necessary. In the alternative "positioned away from an external edge." | Indefinite under 35 U.S.C. § 112. Alternatively, "located to permit close engaging of the peripheral ends of the ornamentation element with the outer surface of the article of clothing." |

(Dkt. #39 at p. 30; Dkt. #50 at p. 26; Dkt. #55 at p. 4).  The parties submit that this term appears in Claims 1 and 13. (Dkt. #55 at pp. 1-2).

### 1.  The Parties' Positions

The parties dispute whether the term "distanced from peripheral ends" is indefinite under 35 U.S.C. § 112.  In the alternative, the parties dispute whether the patentee limited the scope of the claims during prosecution to require "close engaging of the peripheral ends of the ornamentation element with the outer surface of the article."   Plaintiff argues that the claim language is clear that the attached element is positioned away from the external edges of the ornamentation element. (Dkt. #39 at p. 31).  Plaintiff further argues that Defendant's construction is illogical and severely curtails the intentions of the inventor. (Dkt. #39 at p. 32).  Plaintiff contends that Defendant's proposed limitations of "visibility" and "perpendicular direction" are not found in the specification. (Dkt. #39 at p. 32).

Defendant responds that the phrase "distanced from the peripheral end" does not indicate how much distance is required to meet this limitation. (Dkt. #50 at p. 26).  Defendant contends that the Court should find the phrase distanced from the peripheral ends to be indefinite. (Dkt. #50 at p. 27).

In the alternative, Defendant argues that during prosecution Plaintiff explained that the

attachment element is distanced from the peripheral ends so as to permit close engaging of the peripheral ends of the ornamentation element with the outer surface of the article. (Dkt. #50 at p. 27) (citing Dkt. #50-3 at pp. 13, 15, 17).  Defendant contends that Plaintiff amended the claims, and argued that the adhesive strips disclosed in the prior art "physically prevent the peripheral ends of the ornamentation from closely engaging the outer surface of the article of clothing or athletic shoe or sneaker." (Dkt. #50 at p. 28) (citing Dkt. #50-4 at p. 24).  Defendant further argues that Plaintiff represented that its claims required structures that closely engaged with the outer surface of the shoe. (Dkt. #50) (citing Dkt. #50-3 at p. 17).  Defendant contends that the Court should adopt a construction where the attachment element is so "located to permit close engaging of the peripheral ends of the ornamentation element with the outer surface of the article of clothing." (Dkt. #50 at p. 29).

Plaintiff replies that the phrase "distanced from the peripheral ends" is amply supported by the specification which provides enough structure to enable one of ordinary skill in the art to practice the invention. (Dkt. #52 at p. 5).  Plaintiff contends that Defendant's alternative construction focuses on a "tongue-and-groove" embodiment in the specification. (Dkt. #52 at p. 6).  Plaintiff further contends that Defendant's alternative construction supports a construction of "positioned away from the external edge." (Dkt. #52 at p. 6).

Plaintiff also argues that the specification provides one of ordinary skill in the art with sufficient support to practice the invention. (Dkt. #52 at p. 6).  Plaintiff further argues that claim 23 makes clear that the "distance" cannot be just any amount of spacing away from the peripheral ends, but instead must only be a distance sufficient to reduce incidence of accidental separation between the ornamentation element and the outer surface. (Dkt. #52 at p. 6).  Plaintiff also argues that Defendant's alternative proposed construction of "distanced from peripheral ends"

conclusively demonstrates that the phrase is definite. (Dkt. #52 at p. 7).

### 2. Analysis

The Court finds that the term "distanced from peripheral ends," when read in light of the specification delineating the patent and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus*, 134 S. Ct. at 2124. Claim 1 recites that the "ornamentation element" includes an "attachment element configured for cooperative releasable fixed fastening engagement with the at least one fastening element of said base anchoring element." The disputed terms relates to the placement of the attachment element on the ornamentation element. Specifically, claim 1 recites "the attachment element being positioned on an inner surface area of the ornamentation element distanced from peripheral ends of the ornamentation element."

The specification further informs the meaning of the disputed phrase by stating that "[t]he attachment and the base anchor provide the fastening of the ornamentation to the outer surface of the shoe substantially without intervening fastening elements, *between the ends of the ornamentation and the outer surface of the shoe,* which space the peripheral ends from the shoe." '284 Patent at Abstract (emphasis added). Thus, the intrinsic evidence indicates that "distance from peripheral ends" requires "positioned away from an external edge of the ornamentation element."

The prosecution history further informs the meaning of the term. Specifically, the patentee argued that "all the embodiments of the James reference, require that the entire outer periphery of both the athletic shoe and the ornamental piece be completely surrounded by corresponding elements of hook and eye fasteners (commonly known by the trademark Velcro)- see Figures 1 a, 2b, 3a, 5a and 5b." (Dkt. #50-4 at p. 24). The Velcro (item 30) illustrated in Figure 2b is

completely around the entire outer periphery of the ornamental piece.



Figure 2b

James at Figure 2b. The patentee later argued that Figures 3A, C and D and Figure 8 of the '284 Patent "show the positioning of the attachment element being distanced from the peripheral end of the ornament." Thus, a person of ordinary skill in the art would understand that "distanced from peripheral ends" means "positioned away from an external edge of the ornamentation element." Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that the term is indefinite.

Turing to Defendant's alternative construction, the Court rejects it because it would improperly limit the claims to a disclosed embodiment. Defendant contends that the patentee argued during prosecution that the claims required structures that closely engaged with the outer surface of the shoe. (Dkt. #50 at p. 28). The Court disagrees that the patentee clearly and unmistakably disavowed all embodiments except ones that require the peripheral ends to be "closely engaged" with the article of clothing.

Defendant correctly argues that the patentee stated that the Velcro in the prior art prevented the peripheral ends form closely engaging the outer surface of the shoe. (Dkt. #50-4 at p. 24). However, the "closely engaged" limitation was not added to the independent claims during prosecution, but instead was added to dependent claims. (Dkt. #50-4 at p.19 (claim 23), p. 21

(claims 35, 36, 37, 38)).  Indeed, the "closely engaged" limitation appears in dependent claims 9, 18, 19, and 20 of the '284 Patent, and not the independent claims.

Moreover, as discussed above, the patentee distinguished the prior art based on the location of the attachment element.  And it was this location distinction that was added to the independent claims.  Accordingly, the Court finds that the patentee did not clearly and unmistakably disavow all embodiments except ones that require the peripheral ends to "closely engaged" with the article of clothing.

To be sure, the specification describes the "closely engaged" embodiment as an exemplary embodiment.  The specification states that "in *one or more exemplary embodiments,* in this latter step that the peripheral ends of the decorative ornamentation element be, *for example*, configured to closely engage the outer surface of the article of clothing to enhance the aesthetic appearance of the decorative ornamentation element on the article of clothing and to reduce incidence of accidental separation between the decorative ornamentation element and the outer surface of the article of clothing." '284 Patent at 4:16–24.

Here, the specification indicates that not every embodiment is required to have the "closely engaged" limitation. *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term.") (internal citation omitted).  Accordingly, the intrinsic evidence indicates that there is no "closely engage" requirement that should be read into the disputed term "distanced from peripheral ends."  Therefore, Defendant has not provided a persuasive reason to limit this term to a preferred embodiment.

The Court therefore hereby construes **"distanced from peripheral ends"** to mean

**"positioned away from an external edge of the ornamentation element."**

### E. "unintended removal"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "unintended removal" | No construction necessary. In the alternative only, "unplanned taking off or taking away." | Indefinite under 35 U.S.C. § 112. |

(Dkt. #39 at p. 21; Dkt. #55 at p. 4). The parties submit that this term appears in Claims 1 and 13. (Dkt. #55 at p. 4).

### 1. The Parties' Positions

The parties dispute whether the term "unintended removal" is indefinite under 35 U.S.C. § 112. Plaintiff argues that the '284 Patent makes clear that unintended removal is the unwanted removal of the attachments from the anchoring elements. (Dkt. #39 at p. 22). Plaintiff contends that the goal of the '284 Patent is to provide selective, *i.e.*, user-desired, removal of ornamental elements. (Dkt. #39 at p. 22) (citing '248 Patent at 3:22–25). Plaintiff also contends that a person of ordinary skill in the art would easily understand that the "unintended removal" is used throughout the '284 Patent to describe that the ornament is only removed upon the wearer's decision to do so. (Dkt. #39 at p. 22).

Plaintiff further argues that the term "unintended removal" is not indefinite. (Dkt. #39 at p. 22). Plaintiff contends that the '284 Patent provides sufficient support for "unintended removal" and makes clear that unintended removal is accomplished by providing the anchoring elements with "elements for resistance." (Dkt. #39 at p. 23) (citing '284 Patent at 3:24–25).

Defendant did not provide any argument related to this term in its briefing. During the Claim Construction Hearing, Defendant argued that "intent" is not structure. According to Defendant, the term is indefinite under 35 U.S.C. § 112. (Dkt. #55 at p. 4).

## 2.  Analysis

The Court finds that the term "unintended removal," when read in light of the specification delineating the patent and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention.  *Nautilus*, 134 S. Ct. at 2124.  Claim 1 is a "method for providing changeable items of design on clothing."  Thus, the context of claim 1 is adding or removing a changeable item (*i.e.*, "at least one changeable ornamentation element") on the clothing (*i.e.*, "an existing article of clothing").  Claim 1 further recites that the "attachment element" of the "the at least one ornamentation element" includes "elements configured to provide both lateral and vertical resistance to prevent unintended removal of the ornamentation element from the fixed fastening engagement."  In the context of this claim language, a person of ordinary skilled in the art would understand the scope of the invention.

The specification further informs those skilled in the art about the scope of the invention with reasonable certainty.  The specification states that "[t]he attachments may be readily removable from the anchoring elements for effecting change of decorative appearance but are provided with elements for resistance to unintended removal."  '284 Patent at 3:22–25.  The specification provides further context by defining the term "non-removably."  The specification states that "[t]he steps of: non-removably or, for example, fixedly integrating at least one portion of the outer surface of an existing article of clothing, such as a sneaker, with at least one base anchoring element ('non-removably', as used herein, means not readily removable), examples of non-removably integrating include, for example, sewing, stapling, riveting and non-releasable gluing."  *Id.* at 3:52–59.  Thus, a person of ordinary skill in the art would understand that these examples do not fall within the scope of the claims, which further informs those skilled in the art about the scope of the invention with reasonable certainty.

Finally, the specification also discloses examples of "accidental separation" and "accidental displacement."  The specification states that "[i]t is preferred for example, in one or more exemplary embodiments, in this latter step that the peripheral ends of the decorative ornamentation element be, for example, configured to closely engage the outer surface of the article of clothing to enhance the aesthetic appearance of the decorative ornamentation element on the article of clothing and to reduce incidence of *accidental separation* between the decorative ornamentation element and the outer surface of the article of clothing." *Id.* at 4:16–24 (emphasis added).  Similarly, the specification states that "the tongue-and-groove mechanism may be horizontal but with a placement locking element to prevent unwanted accidental displacement." *Id.* at 8:19–21.  Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that the term is indefinite.

The Court therefore hereby construes **"unintended removal"** to have its **plain meaning.**

## CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 18th day of February, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE